## Curry *et al. versus* Raymond.

The admission of a party in ejectment to defend as landlord, is no evidence that the party first sued held the premises as tenant to the party so admitted.

Where the premises were sold at sheriff's sale as the property of the defendant in possession, in order to interpose the title of the landlord as a defence to an ejectment against such party, the tenancy must be proved on the trial.

A certified copy of a mortgage duly recorded, is not evidence of a secondary character, but may be given in evidence without either producing or proving the loss of the original.

ERROR to the District Court of *Philadelphia*.

This was an action of ejectment brought by John M. Wetherell, against Robert L. Curry, to recover a lot of ground in West Philadelphia, containing in front or breadth on the Haverford road, sixty-seven feet six inches, and extending in length or depth, crossing several streets, about one thousand feet, to the Schuylkill river road. After the suing out of the writ, Hannah Raymond, devisee of Josiah Raymond, was admitted on petition and affidavit to defend as landlady. The lot in question had belonged to Robert L. Curry.

The plaintiff then offered in evidence a certified copy of a certain mortgage, given by Robert L. Curry, of the premises in question to Mary E. Greeves and Charles E. Pleasants, dated September 28, 1846, to secure the payment of nine hundred dollars on the first day of January, 1852, and nine hundred dollars on the first day of January, 1857, to the admission of which the counsel for the defendants objected; but the learned judge overruled the objection and admitted the evidence, where-

[Curry *et al. v.* Raymond.]

upon, at the request of the counsel for the defendants, he scaled this first bill of exceptions.

The plaintiff further showed the record of a suit in the District Court of Philadelphia, by Isaac Elliott and Samuel E. Pleasants, executors of Mary E. Greeves, deceased, against Robert L. Curry, No. 263, to January Term, 1850, on a bond accompanying the foregoing mortgage, in which an attorney appeared, styling himself attorney for defendant, and filed a *narr.* and confessed judgment against Curry for $3600. No warrant of attorney, however, was filed. An *alias fi. fa.* was issued on said judgment to September Term, 1850, which was returned with a levy and condemnation of the premises in question. On the 12th October, 1850, this judgment was opened at the instance of the defendant, Curry, and he let into a defence. And on the 18th November, 1851, there was a verdict in his favour; but pending a rule for a new trial, on the 3d January, 1853, Curry voluntarily confessed judgment in the case for $1430. A *venditioni exponas* was issued to March Term, 1853, and the premises in dispute were sold, by virtue of that writ, to John M. Wetherell, the plaintiff in this action, for $2600, and the sheriff executed, acknowledged, and delivered to him a deed for the same, dated 21st May, 1853.

The defendants showed a judgment in favour of William F. Green, in the Common Pleas of Philadelphia city and county, on the 19th October, 1851, and that by proceedings on the same, the premises in question, were on the 7th day of June, 1852, sold by the sheriff to John M. Wetherell, for the sum of $600, and a deed duly executed to him. For the purpose of showing that this deed was held in trust for Josiah Raymond, who was an uncle of Robert L. Curry, and that the second sale had been made in fraud of such trust, the defendant exhibited the following papers:—

"I purchased at sheriff's sale the lot on Haverford street, Mantua, lately sold as the property of Robert L. Curry, which I hereby engage to convey to the order of Josiah Raymond, of Boston, or his agent, Robert L. Curry, upon the payment to me of two hundred and six dollars, with interest from this date, having received by check of George Carpenter, prothonotary, to the order of J. F. Johnson for the balance above that sum for my claim on said street, provided said payment be made in thirty days from this date; but, if not paid within that time, I reserve the right of selling the same at public sale for the same, including costs, as witness my hand, this 23d of 12th mo., 1852.

(Signed)                    "JOHN M. WETHERELL."

And also the following:—

"I purchased at sheriff's sale, and now hold, a lot in Mantua, adjoining to the east of a lot purchased by me of Joshua Matlack,

[Curry *et al. v.* Raymond.]

which I hereby engage to convey to the order of Josiah Raymond, or of his agent, Robert L. Curry, upon the payment to me of fifteen hundred and eight $\frac{88}{100}$ dollars, with interest, and then also to convey to R. L. Curry, or his order, two ground-rent deeds, now held by me, on Elm street, given by Noble Gilbert, and at any time to convey to said R. L. Curry two mortgages on said lots, he releasing me from a contract made with Noble Gilbert for improvement of said lots.

"1st mo. 24th, 1853.

"JOHN M. WETHERELL."

This amount was afterwards paid to Wetherell by the appropriation of the proceeds of the sale to a judgment Raymond held against Curry.

This first sheriff's deed was, by the order of Wetherell, delivered over to R. L. Curry, and it remained in his possession until the 3d of May, 1853, when it was delivered over to Wetherell, he sending for it the following order:—

"Please send me the sheriff's deed, as I want to prepare to take the new deed. I wish to have it as soon as possible to show the sheriff."

Wetherell paid to the sheriff the amount of the debt, interest, and costs of the judgment upon which the last sale was made, and exhibited the former sheriff's deed, and claiming to be entitled to the balance in virtue of his ownership of the property.

On the 11th February, 1854, Curry paid to Wetherell one hundred and seventy-five dollars on account of the $1508.88, mentioned in the paper of 24th January, 1853.

On the 24th May, 1854, and before the bringing of this suit, Robert L. Curry tendered to Wetherell, the plaintiff, as agent for Josiah Raymond's estate, $1629.59, being the amount due on the paper of the 24th January, 1853, and demanded a conveyance of the premises to Samuel P. Hancock, in trust for Raymond's estate, and, at the same time, tendered a blank deed for that purpose. Wetherell refused to accept the money or to execute the deed, but claimed to have purchased the property on his own behalf.

The plaintiff produced upon notice and the defendant offered in evidence two ground-rent deeds, each for thirty-seven dollars and fifty cents per annum, and two mortgages, each for $400, on the lots situate on Elm street, the ground-rents reserved by John M. Wetherell, and payable by Noble Gilbert, and the mortgages given by Noble Gilbert to John M. Wetherell. This offer was objected to by plaintiff, and rejected by the court.

The defendants then offered to show the value of the two lots on Elm street, out of which the ground-rents issue, and on which the mortgages are secured, in order to prove that plaintiff had

[Curry *et al.* v. Raymond.]

sufficient security outside of the lot in question for all the individual indebtedness of Robert L. Curry to him. The court overruled the offer and sealed a bill of exceptions.

The defendants then offered to show the value of the lot in dispute at the time of the sheriff's sale, as evidence of fraud on the part of the plaintiff. But this was also objected to, and rejected by the court.

There was no evidence given on the trial that Robert L. Curry was the tenant of Hannah Raymond.

The court below directed the jury to find for the plaintiff, which they accordingly did.

A motion was made for a new trial in the court below, but the same was refused, the court (SHARSWOOD, P. J.) delivering the following opinion :—

"This was an ejectment. The plaintiff was the sheriff's vendee; Curry, the defendant in the original judgment. By an order of the court, upon a formal petition and affidavit filed, Hannah Raymond had been admitted as landlady to defend, upon the allegation that Curry was her tenant. In making that order, however, the court did not look into the plaintiff's title, and of course did not prejudge the question, whether the title of Hannah Raymond could be made use of in this case. Nothing is better settled than that, whatever be the interest of the defendant, whether it be a term for years or a fee, passes by the sale ; and in an ejectment by the sheriff's vendee, against the original defendant, he cannot set up an outstanding title in a third person: Young *v.* Algeo, 3 *Watts* 223. When the sheriff sells the lands of the defendant in a judgment in possession, the latter cannot make any defence against the purchaser, as the latter acquires a right to the defendant's possession, *at least*, which will support ejectment against him : Dennison's Appeal, 1 *Barr* 201 ; Snavely *v.* Wagner, 3 *Barr* 275.

"Whether the tenant in possession in such case can set up as a defence that the plaintiff had purchased as a trustee for him or his landlord, has never been expressly decided. In this case there was no evidence whatever that the defendant did hold as the tenant of Hannah Raymond; nor was there any evidence that the purchase by plaintiff at sheriff's sale was in trust.

"It is true that there was evidence that the plaintiff was a trustee for Raymond prior to the sheriff's sale. That sale was upon an old mortgage, and there was no evidence to show that the plaintiff had anything to do with procuring a sale upon it. The bond accompanying it had been entered up, and upon adversary proceedings the sale had taken place.

"Until the cases of Prevost *v.* Gratz, 1 *Pet. C. C. R.* 375, and Fisk *v.* Sorber, 6 *W. & S.*, which establish that a trustee may purchase at a public sale property taken out of his hands by the

[Curry *et al. v.* Raymond.]

process of the law, and hold the same discharged of the trust, shall be overruled, whatever we may think of the soundness or policy of the exception to the general principle there recognised, we are bound to apply it in the cases which come before us. They take away all pretence of title in Hannah Raymond, even admitting that the defendant would have a right to set up that title in the present proceedings. We think, therefore, that the direction of the court to the jury, to find a verdict for the plaintiff, was right.

                                        " Rule refused."

The defendants thereupon sued out this writ, and assigned here for error, That the court below erred in admitting the certified copy of the mortgage without producing or proving the loss of the original. In excluding evidence of the value of the lots on Elm street, and of the lot in dispute. And in directing the jury to find for the plaintiff.

*Longstreth*, for plaintiff in error.

*Lex*, for defendant in error.

The opinion of the court was delivered by

KNOX, J.—In the absence of evidence tending to prove that Curry was the tenant of Hannah Raymond, he could not protect his possession by showing either a legal or an equitable title in her. Nor could she, although admitted to defend as landlady, interpose her title to protect the possession of Curry, unless she first proved that he held the possession as her tenant. There was an entire failure to prove the tenancy, and consequently the purchase of the property by Wetherell at sheriff's sale gave him the clear right to recover the possession held by Curry.

The admission of Hannah Raymond to defend as landlady, was not of itself evidence that Curry was her tenant. As she was admitted upon her own affidavit that he was her tenant, but in order to make her title or right to the possession available, it was a necessary part of her case to prove upon the trial that Curry was her tenant. As the instruction to the jury to find for the plaintiff was right, for the reason above indicated, we would not reverse the judgment of the District Court even if we differed from the learned judge who presided upon the trial, upon the question of the right of Wetherell to purchase the estate in controversy at the sheriff's sale, so as to hold it discharged from his stipulation to convey to Josiah Raymond, upon the payment of the sum therein mentioned. The case does not require us to determine this point, and it is only necessary to say that no con-

[Curry *et al. v.* Raymond.]

struction unfavourable to the view taken in the District Court can properly be given to our silence.

· There was no error in admitting the certified copy of the mortgage, nor in rejecting the value of the lot in controversy, and the two lots on Elm street. The exemplification of a recorded mortgage may be given without producing the original or proving its loss. The certified copy of an instrument duly recorded is not evidence of a secondary character, but stands upon an equality with the original paper.

Judgment affirmed.